1  S. Peter Serrano
2  United States Attorney
   Eastern District of Washington
3  Rebecca R. Perez
4  Brandon L. Pang
   Assistant United States Attorneys
5  Post Office Box 1494
6  Spokane, WA 99210-1494
   Telephone: (509) 353-2767
7

FILED IN THE U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

OCT 16 2025

SEAN F. McAVOY, CLERK
RICHLAND, WASHINGTON

8
9           UNITED STATES DISTRICT COURT
        FOR THE EASTERN DISTRICT OF WASHINGTON
10
11  UNITED STATES OF AMERICA,
12              Plaintiff,                Case No.: 4:24-CR-6018-MKD-2
13       v.                               Plea Agreement
14  FAYE CARIVEAU,
15
16              Defendant.

17      Plaintiff United States of America, by and through S. Peter Serrano, United
18  States Attorney the Eastern District of Washington, and Rebecca R. Perez and
19  Brandon L. Pang, Assistant United States Attorneys for the Eastern District of
20  Washington, and Defendant Faye Cariveau ("Defendant"), both individually and
21  by and through Defendant's counsel, Kenneth Therrien, agree to the following Plea
22  Agreement.
23      1.   <u>Waiver of Indictment, Guilty Plea and Maximum Statutory Penalties</u>
24      Defendant agrees to enter a plea of guilty to an Information charging
25  Defendant with Distribution of 40 Grams or More of Fentanyl, in violation of 21
26  U.S.C. § 841(a)(1), (b)(1)(B)(vi), a Class B Felony.
27      Defendant understands that the following potential penalties apply:
28      a.   a term of imprisonment of not less than 5 years up to 40 years;

PLEA AGREEMENT - 1

   b. a term of supervised release of not less than 4 years and up to a lifetime;

   c. a fine of up to $5,000,000; and

   d. a $100 special penalty assessment.

2. <u>Supervised Release</u>

Defendant understands that if Defendant violates any condition of Defendant's supervised release, the Court may revoke Defendant's term of supervised release, and require Defendant to serve in prison all or part of the term of supervised release authorized by statute for the offense that resulted in such term of supervised release without credit for time previously served on postrelease supervision, up to the following terms:

   a. 5 years in prison if the offense that resulted in the term of Supervised Release is a class A felony,

   b. 3 years in prison if the offense that resulted in the term of Supervised Release is a class B felony, and/or

   c. 2 years in prison if the offense that resulted in the term of Supervised Release is a class C felony.

Accordingly, Defendant understands that if Defendant commits one or more violations of supervised release, Defendant could serve a total term of incarceration greater than the maximum sentence authorized by statute for Defendant's offense or offenses of conviction.

3. <u>The Court is Not a Party to this Plea Agreement</u>

The Court is not a party to this Plea Agreement and may accept or reject it. Defendant acknowledges that no promises of any type have been made to Defendant with respect to the sentence the Court will impose in this matter.

Defendant understands the following:

   a. sentencing is a matter solely within the discretion of the Court;

PLEA AGREEMENT - 2

b. the Court is under no obligation to accept any recommendations made by the United States or Defendant;

c. the Court will obtain an independent report and sentencing recommendation from the United States Probation Office;

d. the Court may exercise its discretion to impose any sentence it deems appropriate, up to the statutory maximum penalties;

e. the Court is required to consider the applicable range set forth in the United States Sentencing Guidelines, but may depart upward or downward under certain circumstances; and

f. the Court may reject recommendations made by the United States or Defendant, and that will not be a basis for Defendant to withdraw from this Plea Agreement or Defendant's guilty plea.

4. <u>Potential Immigration Consequences of Guilty Plea</u>

If Defendant is not a citizen of the United States, Defendant understands the following:

a. pleading guilty in this case may have immigration consequences;

b. a broad range of federal crimes may result in Defendant's removal from the United States, including the offense to which Defendant is pleading guilty;

c. removal from the United States and other immigration consequences are the subject of separate proceedings; and

d. no one, including Defendant's attorney or the Court, can predict with absolute certainty the effect of a federal conviction on Defendant's immigration status.

PLEA AGREEMENT - 3

Defendant affirms that Defendant is knowingly, intelligently, and voluntarily pleading guilty as set forth in this Plea Agreement, regardless of any immigration consequences that Defendant's guilty plea may entail.

5. Waiver of Constitutional Rights

Defendant understands that by entering this guilty plea, Defendant is knowingly and voluntarily waiving certain constitutional rights, including the following:

    a. the right to a jury trial;
    b. the right to see, hear and question the witnesses;
    c. the right to remain silent at trial;
    d. the right to testify at trial; and
    e. the right to compel witnesses to testify.

While Defendant is waiving certain constitutional rights, Defendant understands that Defendant retains the right to be assisted by an attorney through the sentencing proceedings in this case and any direct appeal of Defendant's conviction and sentence, and that an attorney will be appointed at no cost if Defendant cannot afford to hire an attorney.

Defendant understands and agrees that any defense motions currently pending before the Court are mooted by this Plea Agreement, and Defendant expressly waives Defendant's right to bring any additional pretrial motions.

6. Denial of Federal Benefits

Defendant understands that by entering this plea of guilty, Defendant may no longer be eligible for assistance under any state program funded under part A of Title IV of the Social Security Act (concerning Temporary Assistance for Needy Families) or benefits under the food stamp program or any state program carried out under the Food Stamp Act. 21 U.S.C. § 862a. Defendant also understands that the Court may deny Defendant's eligibility for any grant, contract, loan,

PLEA AGREEMENT - 4

professional license, or commercial license provided by an agency of the United States or by appropriated funds of the United States. 21 U.S.C. § 862.

7. <u>Elements of the Offense</u>

The United States and Defendant agree that to convict Defendant of Distribution of 40 Grams or More of Fentanyl, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(B)(vi), the United States would have to prove the following beyond a reasonable doubt.

    a. *First*, on or about April 17, 2024, in the Eastern District of Washington, Defendant did knowingly distribute mixture or substance containing fentanyl to another person, and;

    b. *Second*, the mixture or substance Defendant distributed weighed more than 40 grams.

8. <u>Factual Basis and Statement of Facts</u>

The United States and Defendant stipulate and agree to the following: the facts set forth below are accurate; the United States could prove these facts beyond a reasonable doubt at trial; and these facts constitute an adequate factual basis for Defendant's guilty plea.

The United States and Defendant agree that this statement of facts does not preclude either party from presenting and arguing, for sentencing purposes, additional facts that are relevant to the Sentencing Guidelines computation or sentencing.

In 2023, members of the Federal Bureau of Investigation (FBI) and the Blue Mountain Enforcement Narcotics Team (BENT) began investigating a drug trafficking organization in the Walla Walla, Washington area organized by co-defendant Vicky VILLALOBOS (VILLALOBOS). Based on evidence obtained over months of surveillance, trash pulls, various subpoenas and other process, as well as conversations with confidential informants, agents identified Defendant as

PLEA AGREEMENT - 5

one of the distributors of drugs for the VILLALOBOS organization and a person who VILLALOBOS relied upon to conduct deals on her behalf.

In summer 2023, a confidential informant (CI) identified VILLALOBOS as a trafficker of drugs to Idaho, Oregon, and Washington. The CI provided information about the workings of the VILLALOBOS organization and identified individuals, including Defendant, who had a role in assisting VILLALOBOS. VILLALOBOS coordinated multiple drug pick-ups from locations in California, bringing pounds and kilos of methamphetamine and cocaine to the Walla Walla area.

*Controlled Buys*

Throughout the investigation, law enforcement conducted multiple controlled buys involving VILLALOBOS. VILLALOBOS consistently engaged in drug sales herself or would instruct others including several co-defendants to conduct sales on her behalf. There were multiple controlled buys involving VILLALOBOS from February through June 2024, resulting in the purchase of approximately 5 ounces of cocaine, 200 grams of fentanyl, and 2 pounds of methamphetamine in total.

During one of those controlled buys, on February 1, 2024 within the Eastern District of Washington, the CI contacted VILLALOBOS to make a controlled purchase of an ounce of cocaine for $900. VILLALOBOS told the CI to contact "Faye" (referring to Defendant) to complete the purchase and provided the CI with Defendant's phone number. The CI contacted Defendant and arranged to meet at a home where Defendant worked. The drug exchange was conducted at the identified location in the garage area, with Defendant handing over what the Drug Enforcement Administration (DEA) Lab has confirmed to be approximately 23.9 grams of cocaine.

On April 17, 2024, the CI was contacted by VILLALOBOS who stated she would sell the CI a boat of pills and an ounce of cocaine. The CI was unable to

PLEA AGREEMENT - 6

meet with VILLALOBOS before she left town, so VILLALOBOS indicated she left the drugs with Defendant so the CI could complete the transaction. The CI contacted Defendant who confirmed that VILLALOBOS had provided her with the drugs and the deal could be conducted at the home where she worked, which was within the Eastern District of Washington. The CI arrived at the home and gave Defendant $2,000 in exchange for 1,000 fentanyl pills and 1 ounce of cocaine. The DEA Lab tested the purchased substances and determined them to be approximately 94.9 grams of fentanyl (877 pills) and 26.0 grams of cocaine.

Defendant admits and acknowledges working with VILLALOBOS and others to distribute controlled substances, including the amounts listed above during the controlled buys on February 1, 2024, and April 17, 2024.

9. The United States' Agreements

The United States Attorney's Office for the Eastern District of Washington agrees that at the time of sentencing, the United States will move to dismiss the indictment in this case as it pertains to this Defendant.

The United States Attorney's Office for the Eastern District of Washington agrees not to bring additional charges against Defendant based on information in its possession at the time of this Plea Agreement that arise from conduct that is either charged in the Indictment or identified in discovery produced in this case, unless Defendant breaches this Plea Agreement before sentencing.

10. United States Sentencing Guidelines Calculations

Defendant understands and acknowledges that the United States Sentencing Guidelines ("USSG" or "Guidelines") apply and that the Court will determine Defendant's advisory range at the time of sentencing, pursuant to the Guidelines. The United States and Defendant agree to the following Guidelines calculations.

a. *Base Offense Level*

The United States and the Defendant agree and stipulate at least 100 KG but less than 400 KG of converted drug weight was distributed and possessed in

PLEA AGREEMENT - 7

furtherance of the criminal activity jointly undertaken by the Defendant and co-conspirators and this Defendant's relevant conduct for sentencing purposes should be calculated based upon this amount, pursuant to USSG §1B1.3. Therefore, the parties agree that based upon overall quantities of the drugs involved, Defendant's base offense level is 24. *See* USSG §2D1.1 (c)(8).

      b.    *Special Offense Characteristics*

The parties agree Defendant is eligible for "safety valve" pursuant USSG §2D1.1(b)(18), 18 U.S.C. § 3553(f), and USSG §5C1.2. Therefore, her base offense is decreased by 2 levels. USSG §2D1.1(b)(18).

The parties make no further agreements about any special offense characteristics.

      c.    *Acceptance of Responsibility*

The United States will recommend that Defendant receive a downward adjustment for acceptance of responsibility, pursuant to USSG §3E1.1(a), (b), if Defendant does the following:

    i.    accepts this Plea Agreement;

    ii.    enters a guilty plea at the first Court hearing that takes place after the United States offers this Plea Agreement;

    iii.    demonstrates recognition and affirmative acceptance of Defendant's personal responsibility for Defendant's criminal conduct;

    iv.    provides complete and accurate information during the sentencing process; and

    v.    does not commit any obstructive conduct.

The United States and Defendant agree that at its option and on written notice to Defendant, the United States may elect not to recommend a reduction for acceptance of responsibility if, prior to the imposition of sentence, Defendant is charged with, or convicted of, any criminal offense, or if Defendant tests positive

PLEA AGREEMENT - 8

for any controlled substance.

        d.    *Agreements Regarding Representations to the Court*

The United States has a duty of candor to the tribunal. If the United States and Defendant do not agree on the appropriate length of incarceration, the appropriate length or applicable terms of supervised release, and/or the correct guidelines calculations, variances, departures, and/or enhancements, the United States reserves the right to respond to any and all arguments made by Defendant, on any bases the United States deems appropriate, at all stages of this criminal case.

Defendant may make any arguments it deems appropriate, at all stages of this criminal case.

With regard to all briefing, submissions, and hearings in this criminal case, the United States and Defendant agree to the following provisions:

    i.    The United States and Defendant may each respond to any questions from the Court or United States Probation Office;

    ii.    The United States and Defendant may each supplement the facts under consideration by the Court by providing information the United States or Defendant deems relevant;

    iii.    The United States and Defendant may each present and argue any additional facts that the United States or Defendant believe are relevant to the Sentencing Guidelines computation or sentencing;

    iv.    The United States and Defendant may each present and argue information that may already be known to the Court, including information contained in the Presentence Investigation Report;

      v.      The United States and Defendant may each respond to any arguments presented by the other;

      vi.      In order to support the United States' sentencing recommendation as set forth herein, the United States may oppose and argue against any defense argument or any recommendation for any sentence lower than the sentence recommended by the United States on any basis, including arguments for a lower offense level, a lower criminal history calculation, the application or non-application of any sentencing enhancement or departure, and/or any variance from the Guidelines range as calculated by the Court;

      vii.      In order to support the defense sentencing recommendation as set forth herein, Defendant may oppose and argue against any argument by the United States, or any recommendation for any sentence higher than the sentence recommended by the defense on any basis, including arguments for a higher offense level, a higher criminal history calculation, the application or non-application of any sentencing enhancement or departure, and/or any variance from the Guidelines range as calculated by the Court;

      viii.      The United States may make any sentencing arguments the United States deems appropriate so long as they are consistent with this Plea Agreement, including arguments arising from Defendant's uncharged conduct, conduct set forth in charges that will be dismissed pursuant to this Plea Agreement, and Defendant's relevant conduct; and

PLEA AGREEMENT - 10

    ix.  Defendant may make any sentencing arguments consistent with this Plea Agreement Defendant deems appropriate.

  e. *No Other Agreements*

The United States and Defendant have no other agreements regarding the Guidelines or the application of any Guidelines enhancements, departures, or variances.

  f. *Criminal History*

The United States and Defendant have no agreement and make no representations about Defendant's criminal history category, which will be determined by the Court after the United States Probation Office prepares and discloses a Presentence Investigative Report.

11. Incarceration

At the time of Defendant's original sentencing in the District Court, the United States agrees to make a sentencing recommendation to the Court that is consistent with this Plea Agreement. The United States' agreement to make such a recommendation is limited exclusively to the time of Defendant's original sentencing in the District Court. The United States' agreement to make such a recommendation does not prohibit or limit in any way the United States' ability to argue for or against any future sentencing modification that takes place after Defendant's original sentencing in the District Court, whether that modification consists of an amendment to the Guidelines, a change to a statutory minimum or maximum sentence, any form of compassionate release, any violation of Supervised Release, or any other modification that is known or unknown to the parties at the time of Defendant's original criminal sentencing. In this Plea Agreement, the United States makes no promises or representations about what positions the United States will take or recommendations the United States will

make in any proceeding that occurs after Defendant's original sentencing in the District Court.

The United States agrees to recommend the low end of the Guidelines, as calculated by the United States.

Defendant may recommend any legal sentence.

12. <u>Supervised Release</u>

The United States and Defendant each agree to recommend 5 years of supervised release. Defendant agrees that the Court's decision regarding the conditions of Defendant's Supervised Release is final and non-appealable; that is, even if Defendant is unhappy with the conditions of Supervised Release ordered by the Court, that will not be a basis for Defendant to withdraw Defendant's guilty plea, withdraw from this Plea Agreement, or appeal Defendant's conviction, sentence, or any term of Supervised Release.

The United States and Defendant agree to recommend that in addition to the standard conditions of supervised release imposed in all cases in this District, the Court should also impose the following conditions:

    a. The United States Probation Officer may conduct, upon reasonable suspicion, and with or without notice, a search of Defendant's person, residences, offices, vehicles, belongings, and areas under Defendant's exclusive or joint control.

    b. Defendant shall participate and complete such drug testing and drug treatment programs as the Probation Officer directs.

    c. Defendant shall complete mental health evaluations and treatment, including taking medications prescribed by the treatment provider. Defendant shall allow reciprocal release of information between the Probation Officer and the treatment provider. Defendant shall contribute to the cost of treatment according to the Defendant's ability.

PLEA AGREEMENT - 12

13. <u>Criminal Fine</u>

The United States and Defendant may make any recommendation concerning the imposition of a criminal fine. Defendant acknowledges that the Court's decision regarding a fine is final and non-appealable; that is, even if Defendant is unhappy with a fine ordered by the Court, that will not be a basis for Defendant to withdraw Defendant's guilty plea, withdraw from this Plea Agreement, or appeal Defendant's conviction, sentence, or fine.

14. <u>Mandatory Special Penalty Assessment</u>

Defendant agrees to pay the $100 mandatory special penalty assessment to the Clerk of Court for the Eastern District of Washington, pursuant to 18 U.S.C. § 3013.

15. <u>Payments While Incarcerated</u>

If Defendant lacks the financial resources to pay the monetary obligations imposed by the Court, Defendant agrees to earn money toward these obligations by participating in the Bureau of Prisons' Inmate Financial Responsibility Program.

16. <u>Additional Violations of Law Can Void Plea Agreement</u>

The United States and Defendant agree that the United States may, at its option and upon written notice to the Defendant, withdraw from this Plea Agreement or modify its sentencing recommendation if, prior to the imposition of sentence, Defendant is charged with or convicted of any criminal offense or tests positive for any controlled substance.

17. <u>Waiver of Appeal Rights</u>

Defendant understands that Defendant has a limited right to appeal or challenge Defendant's conviction and the sentence imposed by the Court.

In return for the concessions that the United States has made in this Plea Agreement, Defendant expressly waives any and all of Defendant's rights to appeal any and all aspects of Defendant's conviction and any and all aspects of the sentence the Court imposes, on any and all grounds.

PLEA AGREEMENT - 13

Defendant expressly waives Defendant's right to appeal any fine, term of supervised release, or restitution order imposed by the Court.

Defendant expressly waives the right to file any post-conviction motion attacking Defendant's conviction and sentence, including a motion pursuant to 28 U.S.C. § 2255, except one based on ineffective assistance of counsel arising from information not now known by Defendant and which, in the exercise of due diligence, Defendant could not know by the time the Court imposes sentence.

Nothing in this Plea Agreement shall preclude the United States from opposing any post-conviction motion for a reduction of sentence or other attack upon the conviction or sentence, including, but not limited to, writ of habeas corpus proceedings brought pursuant to 28 U.S.C. § 2255.

18. <u>Withdrawal or Vacatur of Defendant's Plea</u>

Should Defendant successfully move to withdraw from this Plea Agreement or should Defendant's conviction be set aside, vacated, reversed, or dismissed under any circumstance, then:

    a. Any obligations, commitments, or representations made by the United States in this Plea Agreement shall become null and void;

    b. The United States may prosecute Defendant on all available charges;

    c. The United States may reinstate any counts that have been dismissed, have been superseded by the filing of another charging instrument, or were not charged because of this Plea Agreement; and

    d. The United States may file any new charges that would otherwise be barred by this Plea Agreement.

The decision to pursue any or all of these options is solely in the discretion of the United States Attorney's Office.

Defendant agrees to waive any objections, motions, and/or defenses Defendant might have to the United States' decisions to seek, reinstate, or reinitiate charges if a count of conviction is withdrawn, set aside, vacated, reversed, or dismissed, including any claim alleging a violation of Double Jeopardy.

Defendant agrees not to raise any objections based on the passage of time, including but not limited to alleged violations of any statutes of limitation or any objections based on the Speedy Trial Act or the Speedy Trial Clause of the Sixth Amendment.

19. <u>Integration Clause</u>

The United States and Defendant acknowledge that this document constitutes the entire Plea Agreement between the United States and Defendant, and no other promises, agreements, or conditions exist between the United States and Defendant concerning the resolution of the case.

This Plea Agreement is binding only on the United States Attorney's Office for the Eastern District of Washington, and cannot bind other federal, state, or local authorities.

The United States and Defendant agree that this Agreement cannot be modified except in a writing that is signed by the United States and Defendant.

<u>Approvals and Signatures</u>

Agreed and submitted on behalf of the United States Attorney's Office for the Eastern District of Washington.

S. Peter Serrano
United States Attorney

_____    10/16/25
Rebecca R. Perez                  Date
Assistant United States Attorney

PLEA AGREEMENT - 15

1  I have read this Plea Agreement and I have carefully reviewed and discussed
2  every part of this Plea Agreement with my attorney. I understand the terms of this
3  Plea Agreement. I enter into this Plea Agreement knowingly, intelligently, and
4  voluntarily. I have consulted with my attorney about my rights, I understand those
5  rights, and I am satisfied with the representation of my attorney in this case. No
6  other promises or inducements have been made to me, other than those contained
7  in this Plea Agreement. No one has threatened or forced me in any way to enter
8  into this Plea Agreement. I agree to plead guilty because I am guilty.

10  _____          9/29/25
11  Faye Cariveau                      Date
12  Defendant

14  I have read the Plea Agreement and have discussed the contents of the
15  agreement with my client. The Plea Agreement accurately and completely sets
16  forth the entirety of the agreement between the parties. I concur in my client's
17  decision to plead guilty as set forth in the Plea Agreement. There is no legal
18  reason why the Court should not accept Defendant's guilty plea.

20  _____          9/29/25
21  Kenneth Therrian                   Date
22  Attorney for Defendant

PLEA AGREEMENT - 16